IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 3:13-cr-30221-DRH |
| ) | |
| JOHN A. VASSEN, ) | |
| ) | |
| Defendant. ) | |

**STIPULATION OF FACTS**

**FILED**

**OCT 17 2013**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

The parties hereby stipulate and agree as follows:

**A.   ILLINOIS PROPERTY TAXES**

1.   In Illinois, the property tax is the largest source of funding for the operation of local government. The property tax is applied to real property, including homes, land, and commercial and industrial buildings. The property tax is applied based upon the value of each property subject to the tax. The property tax is not imposed by the state; rather, it is a local tax imposed by a number of various local government taxing districts (e.g., school districts, municipalities, counties) and it is administered by local officials (e.g. township assessors, chief county assessment officers, local boards of review, county collectors). Property taxes are similarly collected and spent at the local level.

2.   Each county in Illinois has an elected county treasurer, whose job it is to prepare tax bills, record tax payments, distribute property tax payments to the various taxing districts, and to record those who are delinquent in paying their property taxes. County treasurers serve as the collectors for property taxes.

3.   Property taxes are determined by a combination of factors, including the assessed

value of the property subject to the tax and the levy, which is the amount of money each applicable taxing district will receive from the property tax. Once the tax bill is determined, it is mailed to the property owner and is payable in equal installments. If the property taxes are not paid by the due date, the taxes are deemed delinquent.

4.  After the due date for the final installment, the county treasurer lists all delinquent parcels and other necessary information in the Annual Tax Judgment, Sale, Redemption, and Forfeiture Record. Next, application is made to the circuit court for a judgment and order of sale for the taxes on the delinquent properties. After judgment is entered, a lien on the property in the amount of the unpaid taxes and any associated costs is offered for sale at a tax sale. The property itself is not sold. Rather, a lien resulting from the unpaid tax bill is sold. A successful tax buyer receives a tax certificate after the sale.

5.  Property owners are provided with advance notice of the intended collection actions prior to the tax sale. The property owner or any lienholder may pay the taxes, either in person or by agent, to the county collector any time before the tax sale.

B.  **THE TAX SALE GENERALLY**

6.  The procedures governing tax auctions are set forth pursuant to Illinois law (Property Tax Code, 35 ILCS 200/21–190 *et seq.*). That statute provides that after judgment has been rendered against property for nonpayment of taxes and the requisite notice has been issued, the county collector is to offer the property for sale at a public sale.

7.  Once per year, the Madison County, Illinois, treasurer conducts the tax sale. The tax sale allows the county to sell the tax liens, in the amount of the unpaid taxes and related fees, to investors. The county conducts the sale in order to more quickly collect the full amount of property tax and fees it is owed to fund the operation of local government.

8. Investors purchase a tax lien certificate that is a claim against the property until the homeowner pays the full amount of back taxes and fees plus applicable interest, or until the homeowner defaults on the debt entirely. The investor can either collect interest on the taxes owed from the homeowner, or, if the homeowner fails to pay up, the investor can take possession of, or foreclose on, the property by obtaining a tax deed. Therefore, it is generally profitable for tax buyers to participate in tax auctions because they usually ~~are guaranteed to either~~ receive their full investment back with interest or they are able to take ownership of the property.

9. At the tax sale, investors compete to purchase tax lien certificates by bidding on the interest rate the property owner will be required to pay prior to redeeming the tax lien attached to the property. When potential buyers compete against each other at the sale, the penalty percentage rate is, in fact, the only thing subject to bid. Each bidder is required to specify a rate for computing the penalty, up to a maximum of 18%. The bidder offering the least penalty percentage rate, *i.e.,* the bidder who is willing to allow the owner to redeem his property for the smallest penalty, is allowed to purchase the tax lien.

10. When a tax lien is redeemed, the interest rate is paid by the property owner to the tax buyer. As such, competitive bidding benefits financially distressed homeowners by reducing the amount of money that they have to pay to save their home from foreclosure; however, that same system reduces the profit made by tax buyers. Tax buyers prefer to receive high interest rates, which corresponds to higher profits.

11. Once the lien on the property is sold, the county clerk issues a certificate of purchase to the tax buyer, countersigned by the collector, describing the property; indicating the date of sale and the amount of taxes, special assessments, interest and costs for which the property was sold; and confirming that payment of the sale price has been made. Issuance of a

certificate of purchase for delinquent taxes does not affect the delinquent property owner's title to the property; rather the certificate evidences the lien against the property for the unpaid taxes and associated costs and fees.

12. The Illinois Constitution (Ill. Const. 1970, art. IX, § 8) guarantees homeowners the right to save their homes by redeeming property tax liens on their property by repaying the back taxes along with applicable interest and penalties. Redemption periods are based on the type of property and range from 6 months to 2 ½ years; however, the purchaser may extend the redemption period for up to three years from the sale date. The public sale provisions of the Property Tax Code were designed to foster competition in bidding at the tax sale in order to enable owners to exercise their constitutional right of redemption at the lowest possible cost. The policy of protecting a homeowner's constitutional right of redemption is the reason why the investor willing to accept the lowest amount of interest is awarded the lien at the tax sale.

13. The interest penalty rate determined at the tax sale increases over time. If the tax lien is not paid, the interest rate compounds semiannually. In effect, this means that the interest rate is reassessed every six months on an unpaid tax lien, up to a maximum of 108%. The compounding interest rate increases the amount of money a distressed homeowner has to pay to redeem their tax lien and it also increases the likelihood that a homeowner will be unable to pay the interest to redeem the lien, and therefore will lose their home to a tax deed foreclosure. The effect of compound interest is illustrated below:

| Interest rate set by competitive bid at the tax sale: | Interest rate after 6 months | Interest rate after 12 months | Interest rate after 18 months | Interest rate after 24 months | Interest rate after 30 months |
|---|---|---|---|---|---|
| 18% | 36% | 54% | 72% | 90% | 108% |
| 3% | 6% | 9% | 12% | 15% | 18% |

14. If, after being provided notice, the homeowner fails to redeem the lien against his

property within the applicable time period, the tax buyer may file a petition in the circuit court asking the court to direct the county clerk to issue a tax deed for the property to the tax buyer.

### C. MADISON COUNTY TAX AUCTION

15. There are different types of bidders, or tax buyers, who attend the Madison County, Illinois, tax auction. Some are small local investors who purchase a limited number of tax liens, while others are large-scale professional tax buyers who purchase hundreds of thousands of dollars worth of tax liens each year from Madison County, as well as from multiple other counties all throughout the state.

16. FREDERICK BATHON won election as Madison County treasurer in November, 1998. When he took office, BATHON inherited a staff that was administering a competitive bid tax auction where the participating tax buyers had the opportunity to "bid down" the previous bid until only the winning bid remained.

17. BATHON formally implemented a "no trailing bid" policy that eliminated traditional competitive bidding before the November, 2005 tax sale. Rather than accepting the lowest of a series of bids, BATHON's policy required tax buyers to bid simultaneously, and his office purported to accept the first bid that was heard for the lowest interest rate. This resulted in a chaotic scene where every participant at the tax sale shouted their bids simultaneously, leaving the auctioneer, a treasurer's office employee, to subjectively select the "winner." Instead of an auction where the last bidder offering the lowest bid won, BATHON instituted a process where his office controlled the outcome of the tax sale. BATHON structured the auction in a way that maximized the interest rate collected by tax buyers.

18. Certain tax buyers, including **JOHN VASSEN**, reached an implicit mutual understanding that they would typically bid only the statutory maximum interest rate of 18

percent and not compete to reduce the interest rate when purchasing property tax liens at the Madison County tax sale. The tax buyers submitted collusive and noncompetitive bids for the maximum rate and refrained from submitting bids at lesser interest rates. For example,

   a. During the tax auction occurring November 14-15, 2007, 2,549 out of 2,574 property tax liens were awarded to bidders for the statutory maximum interest rate, which represented 99.03% of the property tax liens auctioned.

   b. During the tax auction occurring November 13-14, 2008, 2,290 out of 2,364 property tax liens were awarded to bidders for the statutory maximum interest rate, which represented 96.86% of the property tax liens auctioned.

Certain tax buyers, including **JOHN VASSEN**, made campaign contributions solicited by BATHON so that he would continue structuring the tax sale in a way that maximized the interest rate applied to tax liens sold at the Madison County tax sales. This mutual agreement was reached implicitly without an overt conversation. BATHON participated in this bid rigging and price fixing scheme and permitted the collusion while structuring the tax sale to reward tax bidders who were also campaign contributors.

**D.     TRADE AND COMMERCE**

   19.    During the period covered by this Information, the business activities of **JOHN A. VASSEN** and co-conspirators that are the subject of this Information were within the flow of, and substantially affected, interstate trade and commerce.

Respectfully submitted,

UNITED STATES OF AMERICA

_____
STEVEN D. WEINHOEFT
Assistant United States Attorneys

_____
STEPHEN R. WIGGINTON
United States Attorney

**AGREED:**

_____  Date: 10/17/13
JOHN A. VASSEN

_____  Date: 10/17/13
JOHN O'GARA, Counsel for the Defendant